# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

LEANN ROSSI, THERESA       :
MCGRUDER, ANSLEY PASCOLI,  :
DEBRA POOLE, CHERYL SMALLS, :
and REBECCA CANADA,       :
                              :     CIVIL ACTION FILE NO.
          Plaintiffs,       :     1:10-CV-4254-RWS-AJB
                              :
      v.                     :
                              :
FULTON COUNTY, GEORGIA,    :
                              :
          Defendant.       :

## UNITED STATES MAGISTRATE JUDGE'S ORDER AND
## NON-FINAL REPORT AND RECOMMENDATION

In this action, Plaintiff Rebecca Canada raises employment-discrimination claims against Defendant Fulton County, Georgia, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Am. Compl. [Doc. 16]). Presently before the Court is Defendant's Motion for Summary Judgment as to Plaintiff Rebecca Canada. [Doc. 159]. For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **GRANTED IN PART and DENIED IN PART**.

## I.    Background

As required when considering a motion for summary judgment, the Court has viewed the evidence and reasonable factual inferences in the light most favorable to Plaintiff, the nonmoving party.[1]  *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).  To the extent that material facts are in dispute, the Court has resolved the disputes in Plaintiff's favor.[2]  *See Vaughan v. Cox*, 343 F.3d 1323, 1326 n.1 (11th Cir. 2003).  The Court does not, however, accept legal

---

[1]    Paragraph numbers preceded by "D" refer to Defendant's Statement of Material Facts, as to Plaintiff Rebecca Canada, to Which There Are No Genuine Issues To Be Tried, filed in support of its motion for summary judgment, [Doc. 159-2], and paragraph numbers preceded by "P" refer to Plaintiff Rebecca Canada's Statement of Material Facts Which Present a Genuine Issue for Trial, [Doc. 206-3], filed in opposition to Defendant's motion for summary judgment.  Plaintiff's and Defendant's responses to the statements of material fact will be designated as "P. Resp.," [Doc. 206-2], and "D. Resp.," [Doc. 225-1], respectively.

[2]    The Court notes that for the purposes of resolving a motion for summary judgment, "facts" may not be considered unless they are unopposed or supported by citations to admissible evidence.  *See* Fed. R. Civ. P. 56(c); LR 56.1(B), NDGa.  For this reason, when the opposing party has pointed out that the evidence cited to support a factual statement is unsupportive or inadmissible, the Court has edited the fact to recite only the portion supported by admissible evidence, and in cases in which the citation is absent or unsupportive, the Court has omitted the statement of fact entirely. (*See, e.g.*, P ¶¶ 6, 44, 46, 54-55, 66, 99; D ¶¶ 89, 104).

AO 72A
(Rev.8/8
2)

conclusions, masquerading as facts, as true.[3] *See Day v. Taylor*, 400 F.3d 1272, 1277 (11th Cir. 2005). The facts of the case, for the purpose of adjudicating Defendant's motion for summary judgment, are therefore as follows.[4]

Plaintiff is a white female and was born on March 17, 1958. (D ¶¶ 1-2; P. Resp. ¶¶ 1-2). She has Bipolar II, chronic depression, and migraines. (D ¶ 99; P. Resp. ¶ 99). She was diagnosed with chronic depression as a teenager, diagnosed with migraines in 1986 or 1987, and diagnosed with Bipolar II in 2008. (D ¶¶ 99-101; P. Resp. ¶¶ 99-101). She has migraines regularly. (D ¶ 103; P. Resp. ¶ 103).

Plaintiff became employed with Defendant in September 2000 as a Residential Appraiser. (P ¶ 3; D. Resp. ¶ 3; D ¶ 3; P. Resp. ¶ 3). The Fulton County Tax Assessor's office is responsible for valuing the properties in over 2700 residential neighborhoods in Fulton County. (D ¶ 12; P. Resp. ¶ 12). Plaintiff's duties as a

---

[3]     Accordingly, the Court has disregarded statements of material fact or portions thereof that state legal conclusions. (*See, e.g.*, P ¶¶ 21, 24, 35, 47, 94-95, 97-98; D ¶¶ 77, 180-81).

[4]     The facts recited in this section are intended to establish the context of the case. Additional facts pertinent to the parties' arguments will also be recited in the discussion section below. Statements of fact that have no apparent materiality and are not referenced in the parties' arguments have not been included. *Cf. Ward v. United States*, 154 F.R.D. 291, 293 (M.D. Fla. 1994) (refusing to supply argument for party).

AO 72A
(Rev.8/8
2)

Property Appraiser included appraising properties based on mass appraisal using sales and sales ratios. (D ¶ 5; P. Resp. ¶ 5). She was assigned to the North District, which at that time was located in downtown Atlanta. (P ¶ 4; D. Resp. ¶ 4). In 2002, Plaintiff was promoted to Senior Appraiser and assigned to the South Region, where she reported to Meloney Webb. (D ¶¶ 6, 8; P. Resp. ¶¶ 6, 8). In her role as Senior Appraiser, Plaintiff's responsibilities included supervising appraisers and data listers, assigning work to appraisers such as memos to the Board of Assessors, assisting Appraisers with value changes, and processing property tax assessment appeals. (P ¶ 7; D. Resp. ¶ 7; D ¶ 7; P. Resp. ¶ 7). When assigned to the South Region, Appraisers work out of the downtown office located at 141 Pryor Street in Atlanta, Georgia. (D ¶ 9; P. Resp. ¶ 9).

The management hierarchy within the Fulton County Tax Assessor's Office is as follows: (1) Chief Appraiser, (2) Assistant Chief Appraiser, (3) Deputy Chief Appraiser, and (4) Appraisal Managers. (D ¶ 13; P. Resp. ¶ 13). In 2006, a new Board of Assessors was appointed and hired Burt Manning as Chief Appraiser and Tony George as Assistant Chief Appraiser. (D ¶¶ 16-17; P. Resp. ¶¶ 16-17). Manning served in his position until February 2012, and George served in his until April 2010. (D ¶¶ 26, 28; P. Resp. ¶¶ 26, 28). As Chief Appraiser, Manning was the final decision

AO 72A
(Rev.8/8
2)

maker, had overall responsibility for the Tax Assessor's Office, and oversaw the Assistant Chief Appraiser. (D ¶¶ 19-20; P. Resp. ¶¶ 19-20). As Assistant Chief Appraiser, George was responsible for the day-to-day operations of the Tax Assessor's Office, including successfully preparing the annual tax digest and efficiently and effectively handling appeals for Fulton County. (D ¶ 29; P. Resp. ¶ 29). He did not have the authority to terminate employees, however. (D ¶ 30; P. Resp. ¶ 30). Douglas Kirkpatrick became employed with Fulton County on November 18, 2008, and has served as Deputy Chief Appraiser since then. (D ¶¶ 34-36; P. Resp. ¶¶ 34-36). As Deputy Chief Appraiser, Kirkpatrick is responsible for the day-to-day operations of the residential division of the Fulton County Tax Assessor's Office. (D ¶ 37; P. Resp. ¶ 37). Timothy Brown became the Appraisal Manager of the North Region in 2004 and still serves in that position. (D ¶¶ 53-54; P. Resp. ¶¶ 53-54).

George's management style is described as abrasive, direct, stern, strict, heavy-handed, harsh and dictatorial, and many employees—both male and female—disapproved of it. (D ¶¶ 30-31; P. Resp. ¶¶ 30-31). It was not unusual for an employee to report to Manning that George was rude to them or belittled them. (D ¶ 32; P. Resp. ¶ 32).

AO 72A
(Rev.8/8
2)

From January 2006 through her termination in November 2009, Plaintiff filed paperwork to be approved for intermittent FMLA every year. (D ¶ 115; P. Resp. ¶ 115). Pursuant to Fulton County's FMLA policy, eligible employees are provided with a maximum of twelve weeks of leave as a result of the employee's own serious health condition. (D ¶ 116; P. Resp. ¶ 116). While on FMLA leave, an employee is required to exhaust all paid vacation, holiday, and/or sick leave before going on unpaid leave. (D ¶ 117; P. Resp. ¶ 117). The employee must also keep her manager informed regarding her FMLA status. (D ¶ 119; P. Resp. ¶ 119). When an employee certified for intermittent FMLA leave calls out sick for the day, the employee is required to indicate whether the day taken will be sick leave or FMLA when he calls in; in contrast, an employee certified for continuous FMLA need only call his manager every Monday to notify the manager that the employee is still on FMLA. (D ¶ 119; P. Resp. ¶ 119).

While assigned to the South Region, Plaintiff reported to Webb until Webb retired in December 2006. (D ¶ 66; P. Resp. ¶ 66). When Webb retired, Plaintiff, Kevin Maxey, Deborah Champagne, Nick Durm, and Tony Johnson all applied for the open Appraisal Manager position. (D ¶¶ 38, 46, 67; P. Resp. ¶¶ 38, 46, 67). The Appraisal Manager position required applicants to either already have a Level IV

AO 72A
(Rev.8/8
2)

appraisal certification upon entry to the position or within 1 year. (D ¶ 45; P. Resp. ¶ 45). Maxey, an African-American male, was a Level II Appraiser who had been promoted to Senior Appraiser in 2005. (D ¶¶ 38, 41; P. Resp. ¶¶ 38, 44). In January 2007, Manning, unaware that Maxey was certified as an Appraiser II, promoted Maxey to the Appraisal Manager position. (D ¶¶ 38, 44; P. Resp. ¶¶ 38, 44). Although Plaintiff is certified as a Level IV Appraiser, (D ¶ 10; P. Resp. ¶ 10), Manning, who was the final decision maker for promotions, would not have promoted Plaintiff even if the interview panel had recommended her because of her temperament and his knowledge of her history of encounters with coworkers and other people. (D ¶¶ 68-69; P. Resp. ¶¶ 68-69). Upon his promotion, Maxey was assigned to the South Region. (D ¶ 44; P. Resp. ¶ 44). He became certified as a Level III Appraiser in 2008 and a Level IV Appraiser in 2009. (D ¶ 43; P. Resp. ¶ 43).

In February 2007, Plaintiff filed a grievance in which she alleged that Maxey was less qualified for the Appraisal Manager position. (D ¶¶ 70-71; P. Resp. ¶¶ 70-71; P ¶ 22; D. Resp. ¶ 22). The Grievance Review Committee ("GRC") held a hearing on Plaintiff's grievance and determined that it should be denied because the Tax Assessor's Office had not erred in its practices and procedures and the promotional

7

process had been conducted in accordance with Fulton County policy and procedure. (D ¶¶ 73-75; P. Resp. ¶¶ 73-75).

From approximately February 2007 until August 2007, Plaintiff was involved in several disputes with her co-workers. (D ¶ 82; P. Resp. ¶ 82). On March 9, 2007, Plaintiff also received a written record of counseling after taxpayers filed a written complaint with the Board of Assessors after Plaintiff raised her voice at the taxpayers during a Board of Equalization hearing. (D ¶ 76; P. Resp. ¶ 76). Although Manning found most of the taxpayers' allegations unfounded, he did determine that Plaintiff had acted in an unprofessional manner and found the counseling justified. (P ¶ 26; D. Resp. ¶ 26; Def. Exh. 8 [Doc. 164-8 at 32-33]).

On or about March 22, 2007, Plaintiff requested to be moved from Appraisal Manager Maxey's supervision to the commercial division. (D ¶ 78; P. Resp. ¶ 78). Although Plaintiff asked several times to be reassigned, between March and September 2007, there were no open positions in the commercial division. (D ¶¶ 79-80; P. Resp. ¶¶ 79-80). On August 10, 2007, Plaintiff had a dispute with Donnell Peterson, a young black male who was one of her subordinates because he was calling into a radio show while on the job. (P ¶ 29; D. Resp. ¶ 29). Plaintiff asked that he turn the radio off because he was so loud that others could not do their jobs.

8

(D ¶ 87; P. Resp. ¶ 87). When he became argumentative, Plaintiff told him to sit down and shut up. (*Id*.). Because Maxey noticed a recurring pattern of Canada's behavior and inability to get along with co-workers and taxpayers, he recommended to management that she be directed to the Fulton County Employee Assistance Program for anger-management counseling. (D ¶ 88; P. Resp. ¶ 88). Shortly thereafter, George told Plaintiff she would be moving to the North office or she would be leaving. (P ¶ 30; D. Resp. ¶ 30; Deposition of Rebecca W. Canada ("Pl. Dep.") [Doc. 193] at 93). On or about August 20, 2007, Plaintiff requested a meeting with Manning and George and was directed to take an anger-management class and was told that her reassignment would stand. (D ¶ 90; P. Resp. ¶ 90). As a result of the transfer to the North office, Plaintiff's commute was lengthened to approximately 140 to 150 miles round trip, and she would need to leave work two hours before her medical appointments in order to arrive on time. (P ¶¶ 80-81; D. Resp. ¶¶ 80-81).

Also in 2007, Plaintiff was denied training that Maxey, Henry Brigham, and Brian Gardner received for a mapping class on the new IAS system. (P ¶ 63; D. Resp. ¶ 63). Manning had instructed his management staff not to send employees to class on Fulton County time if they were unable to come to work. (P ¶ 64; D. Resp. ¶ 64). Plaintiff had been a participant in the training but was removed from

9

the program by the previous administration. (D ¶ 156; P. Resp. ¶ 156). She attended training and received her certification the following year. (D ¶ 151; P. Resp. ¶ 151; Pl. Dep. at 111-12).

Around the same time, George gave younger black employees Rhonda Augustine, James White, Zach Mitchell, Tara Parker, and Eric Fields new IAAO appraisal books that set forth standard operating procedure for appraisers and that appraisers consulted regularly to do their jobs. (P ¶ 88; D. Resp. ¶ 88). Neither Plaintiff nor Leann Rossi, another older white female employee, were given new appraisal books. (P ¶ 89; D. Resp. ¶ 89). At the same time he gave out appraisal books, George provided Hewlett-Packard calculators to younger black employees Augustine, White, Mitchell and Bridget Conyers. (P ¶ 91; D. Resp. ¶ 91). Neither Plaintiff, Rossi, nor Ansley Pascoli, another older white female employee, were given the Hewlett-Packard calculators. (P ¶ 92; D. Resp. ¶ 92). In approximately 2008, George gave younger black employees Fields, Conyers, and Augustine new cameras. (P ¶ 93; D. Resp. ¶ 93). Plaintiff asked for a new camera, memory card, and calculator but did not receive any of the requested equipment. (P ¶ 94; D. Resp. ¶ 94). In particular, she wanted a new camera because the new cameras were digital SLR cameras with zoom lenses and had video capability, while Plaintiff had an old camera that was not an SLR,

10

had no interchangeable lenses, and was without video capability. (P ¶ 95; D. Resp. ¶ 95).

In September or October 2007, Plaintiff requested an accommodation through Defendant's Office of Disability Affairs ("ODA"). (D ¶ 105; P. Resp. ¶ 105). Plaintiff's request was not to be reassigned to the North Region because she feared it would make her disabilities worse. (D ¶ 106; P. Resp. ¶ 106). On October 1, 2007, Plaintiff's reasonable-accommodation request was denied. (D ¶ 107; P. Resp. ¶ 107). The ODA stated that Plaintiff's requested accommodation was not covered by the ADA and that commuting to and from work was Plaintiff's sole responsibility. (D ¶ 108; P. Resp. ¶ 108). Plaintiff then asked Manning for an accommodation of flex hours or an earlier shift so that she could beat the traffic. (D ¶ 109; P. Resp. ¶ 109). Manning granted her request and allowed her to start work at 7:00 a.m. (D ¶ 110; P. Resp. ¶ 110). Plaintiff also asked Manning and Brown for permission to leave early on days when she had psychiatric appointments, but that request was "basically denied." (P ¶¶ 45-46; D. Resp. ¶¶ 45-46; Pl. Dep. at 59).

In October 2007, Plaintiff filed a second grievance with the GRC. (D ¶ 91; P. Resp. ¶ 91). In her October 2007 grievance, Plaintiff requested that she be allowed to remain at the downtown office and not be reassigned to the North Region.

11

(D ¶ 92; P. Resp. ¶ 92).  On November 8, 2007, the GRC held a hearing on Plaintiff's grievance and determined that it should be denied because the Tax Assessor's Office did not err in its practices and procedures and that Plaintiff's reassignment was within the authority of the Director and was not retaliatory.  (D ¶¶ 93-95; P. Resp. ¶¶ 93-95).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 28, 2008 ("2008 Charge").[5] (D ¶ 176; P. Resp. ¶ 176; Affidavit of Dr. Ann F. Harris ("Harris Aff."), Exh. 5 [Doc. 175 at 42]).  In the section of the form indicating the cause of the alleged discrimination, Plaintiff checked the boxes marked "race," "sex," "retaliation," and "disability."  (Harris Aff., Exh. 5 [Doc. 175 at 42]).  She indicated that the discrimination started on October 29, 2007, with the last date of discrimination occurring on February 28, 2008.  (*Id*.).  She also checked the box marked "continuing action."  (*Id*.).  The particulars of Plaintiff's charge were as follows:

> I began my employment with the above-named employer in October 2000, as a Real Property Appraiser.  My most recent job title is Senior Real Property Appraiser.  In February 2007, I filed a formal discrimination complaint, with the Personnel Grievance Board.  From the time I filed the complaint to present I have been subjected to different terms and conditions of employment, by being move[d] from my position at the

---

[5]     The EEOC assigned the matter Charge No. 410-2009-05875. (D ¶ 179; P. Resp. ¶ 179).

AO 72A
(Rev.8/8
2)

downtown location to the North Fulton Office. I have been denied to attend meetings and verbally abused.

I believe I have been discriminated against due to my sex (female) race (white) and in retaliation for having complained of unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964 as amended and because of my disability, in violation of Title I of the Americans with Disability Act of 1990, as amended.

(*Id.*). The EEOC issued a no-cause determination, dismissal, and notice of rights on Plaintiff's 2008 Charge on March 4, 2009. (D ¶ 178; P. Resp. ¶ 178).

In March 2008, George moved Plaintiff's start and end times one-half hour later, so that her hours were from 7:30 a.m. to 4:00 p.m. (P ¶ 44; D. Resp. ¶ 44; Pl. Dep. at 57). On April 21, 2008, Plaintiff received a written warning from Brown regarding Canada's failure to carry out work assignments. (D ¶ 123; P. Resp. ¶ 123). On September 4, 2008, Plaintiff received a verbal warning from Brown regarding Plaintiff's chronic tardiness. (D ¶ 124; P. Resp. ¶ 124). Plaintiff's FMLA leave for 2008 ended on September 9, 2008. (D ¶ 127; P. Resp. ¶ 127). From August 1, 2008 to November 10, 2008, Plaintiff was absent twenty-one days on unexcused sick days. (D ¶ 127; P. Resp. ¶ 127). In November 2008, Plaintiff received a Performance Planning & Process Review from Brown regarding her failing rating on Plaintiff's July 16, 2008, Performance Review because of her continued failure to complete work

13

assignments and her excessive absenteeism. (D ¶ 125; P. Resp. ¶ 125). Plaintiff admits that she did not complete her work assignment as instructed. (D ¶ 128; P. Resp. ¶ 128). On December 8, 2008, Plaintiff was suspended for ten working days, without pay, for unexcused or unauthorized absences. (D ¶ 129; P. Resp. ¶ 129). On December 22, 2008, Plaintiff appealed her suspension to the Fulton County Personnel Board. (D ¶ 130; P. Resp. ¶ 130). The Personnel Board denied her appeal as untimely. (D ¶ 131; P. Resp. ¶ 131).

Plaintiff had a continuing three-week period of FMLA in 2009. (D ¶ 118; P. Resp. ¶ 118). On March 17, 2009, Plaintiff received a written warning from Brown regarding her failure to carry out orders and complete her work assignment. (D ¶ 132; P. Resp. ¶ 132). In or around April 2009, Brown requested a supervising Senior Appraiser in the North Office because of Plaintiff's excessive absenteeism. (D ¶ 133; P. Resp. ¶ 133). On May 1, 2009, Plaintiff received a written warning from Manning regarding her attendance. (D ¶ 134; P. Resp. ¶ 134). Plaintiff acknowledged receipt of the Absenteeism and Tardiness Policy. (D ¶ 135; P. Resp. ¶ 135). On July 22, 2009, Plaintiff received a verbal work plan from Brown regarding her expected work responsibilities. (D ¶ 136; P. Resp. ¶ 136).

AO 72A
(Rev.8/8
2)

On August 25, 2009, Plaintiff received a written warning regarding her unexcused absences. (D ¶ 138; P. Resp. ¶ 138). Since July 21, 2009, Plaintiff had been out ten of the last seventeen days and called in sick on July 23 and August 10 through August 13, 2009. (D ¶ 139; P. Resp. ¶ 139). On September 15, 2009, Plaintiff received her second ten-day suspension for unexcused or unauthorized absences. (D ¶ 140; P. Resp. ¶ 140). On November 12, 2009, Plaintiff was notified that she had exhausted her FMLA leave based on her certification dated February 20, 2009. (D ¶ 141; P. Resp. ¶ 141). On November 17, 2009, Manning notified Plaintiff that her FMLA had actually expired on November 10, 2009; she had unexcused absences on November 12 through November 17; and he intended to dismiss her effective November 20, 2009, because of unexcused or unauthorized absences. (D ¶ 142; P. Resp. ¶ 142; P ¶ 58; D. Resp. ¶ 58). Plaintiff had exhausted her FMLA, plus additional time. (D ¶ 173; P. Resp. ¶ 173). Prior to her termination, Plaintiff was offered the option of taking a voluntary demotion from Senior Appraiser to Appraiser, a pay cut, or a ten-day suspension. (D ¶ 144; P. Resp. ¶ 144; P ¶ 55; D. Resp. ¶ 55). Plaintiff decided not to attend the meeting scheduled regarding her dismissal. (D ¶ 143; P. Resp. ¶ 143).

AO 72A
(Rev.8/8
2)

Plaintiff filed a second charge of discrimination with the EEOC on May 13, 2010 ("2009 Charge").[6]  (P ¶ 96; D. Resp. ¶ 96).  In the section of the form indicating the cause of the alleged discrimination, Plaintiff checked the boxes marked "race," "sex," "retaliation," "age," and "disability," and she also checked the box marked "other" and specified "42 U.S.C. §§ 1983 & 1985."  (Pl. Dep., Exh. 26 [Doc. 193-1 at 49]).  She indicated that the discrimination started in 2008 with the last date of discrimination occurring on November 20, 2009.  (*Id.*).  She left the box marked "continuing action" unchecked.  (*Id.*).  The particulars of Plaintiff's charge were as follows:

> I, Rebecca Canada, am a white female, over 40 years of age with a disability.  My employer was the Fulton County Board of Assessors until my termination on November 20, 2009.  I believe I have been systematically discriminated against and retaliated against in violation of the law because of my race, white, gender, female, age, over 40, disability, and retaliated against because I previously filed an EEOC charge, Number 410-2008-02401.

> I was employed as a Senior Appraiser at the Fulton County Board of Assessors.  I achieved a Level IV Appraiser designation, which is the highest achievement level that exists.  I was highly qualified to perform my job.  I also have been diagnosed as having severe depression, and am considered a Qualified Individual with a Disability.  I have utilized expert and highly qualified physicians and medical personnel for a number of years for my medical condition/disability, and e [sic] had to take appropriate amounts of Family and Medical Leave under the Family and

---

[6]    The EEOC assigned the matter Charge No. 410-2008-02401. (D ¶ 176; P. Resp. ¶ 176).

16

Medical Leave Act. All of my FMLA leave was properly documented, and notice was given to my employer in each instance where I utilized FMLA leave or other medical leave.

In 2008 and 2009 I filed an EEOC charge against my employer for refusing to grant me a promotion based on race, gender and age. I also filed a Grievance Arbitration charge against my employer for transferring me from the downtown Atlanta Pryor Street office to the Alpharetta office, despite the fact that I live in Newnan, Georgia. The office transfer meant that I had to drive 2 hours just to get to work and another 2 hours to get home. This mistreatment, discrimination and retaliation aggravated my disability and forced me to take more FMLA and medical leave.

Despite exercising my statutory and employment rights to file charges and confront my employer on their activities, my employer engaged in a systematic pattern of discriminating against me, treating me differently, and retaliating against me by continuously writing me up for absenteeism and unexcused absences despite my being on FMLA leave and having notified my employer of my FMLA leave. My employer also sought to interfere with my ability to attend appointments with specialists at Emory University Hospital to deal with my disability in an aggressive and therapeutic fashion.

On May 1, 2009 during which I was out sick for 3 weeks on FMLA leave, I called into work every day as instructed. Regardless, Chief Appraiser Burt Manning (White, Male), sent me a certified letter to my house while I was on FMLA leave writing me up for absenteeism and tardiness even though I was not at work due to illness caused by my disability.

On August 25, 2009 my supervisor, Timothy Brown (Black, Male) wrote me up for unexcused absences. In both instances I was on approved FMLA leave, because of my disability. In 2008-2009 I requested permission to attend classes to maintain my Appraiser certification.

17

Kevin Maxey, my manager before Tim Brown, sent emails to Burt Manning and Tony George concerning work that had not been properly performed by people under my supervision. In doing so, Kevin Maxey did not tell the truth.

Additionally, I was informed in writing by Tony George, Assistant Chief Appraiser (Black, Male) that he could not spend Fulton County taxpayer funds on me because I was "constantly missing days of work," and that I would have to "come to work on a consistent basis for 2.5 months," whereupon he would "consider" me for training. During this time period Tony George allowed black, male, younger, non-disabled employees go to training to maintain their certification. Tony George was very aware of my disability and the FMLA leave I had to take.

On August 20, 2009 my supervisor, Tim Brown (Black, Male), wrote me telling me that per Tony George I would have to schedule doctor's appointments on my own time, despite my disability, and despite the fact that with my 4-hour a day commute since my transfer, such scheduling would be impossible. I was forced to try to address the limitations of my disability on my own, and on my own time or risk being fired. No other black, male, younger employees with or without disabilities have been forced to handle their situations without any accommodation.

Further, on August 21, 2009 I was informed by Doug Kirkpatrick, Deputy Chief Appraiser (White, Male) that I was not allowed to take any leave whatsoever unless it was FMLA leave "or emergency leave for a supportable emergency purpose till further notice." Despite my efforts my employer refuses to discuss any accommodation related to my disability, whether it be hours of work, even though we have a flex time program, office location, even though I have a 4-hour commute, or other job-related accommodations.

As further evidence of discriminatory treatment, on September 11, 2009, I was required to meet with Chief Appraiser Burt

18

Manning and Deputy Chief Appraiser Doug Kirkpatrick. They gave me paperwork and told me I was suspended due to missing work, although the time missed was due to certified FMLA leave. On Monday, September 14, 2009, I met with them again and laid out the time missed from work compared to my approved FMLA leave. Nevertheless, they continued their pattern of discriminatory treatment by suspending and disciplining me due to my exercising my FMLA rights.

I was eventually terminated on November 20, 2009 because I missed four days of work from November 12-17, 2009. As of November 10, 2009, I had exhausted all of my 2009 FMLA leave, in large part because of my aggravated and worsened medical condition resulting from the systematic discrimination and retaliation against me.

No other black, male, younger employee with or without a disability has been treated to such a systematic harassment and discrimination as I have been, or retaliated against because they filed charges with the EEOC. I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of my race and gender, and retaliated against because I previously filed a charge with the EEOC. I also believe I have been discriminated against in violation of the Age Discrimination Act because of my age, discriminated against and retaliated against in violation of the Americans with Disabilities Act of 1990, as amended, because of my disability, and in violation of 42 USC Section 1983 & 1985.

(*Id*. at 50-52).

On January 5, 2011, the EEOC issued a notice of right to sue in which it explained that it was terminating its processing of the charge because more than 180 days had elapsed since the date the Commission assumed jurisdiction over the

19

charge, the Commissioner had not filed suit, and Plaintiff had requested the notice through her attorney. [Doc. 16-1 at 39].

On March 21, 2011, the Court granted leave to add Plaintiff to the instant suit, which five others had filed on December 30, 2010. [Docs. 1, 10]. Plaintiff Canada raises claims in all six counts.[7] (*See* Am. Compl., *passim*). She alleges in Count One that Defendant violated the ADA when it subjected Plaintiff "to unwelcome harassment based on her disability" when Defendant wrote her up for unexcused absences while she was on FMLA leave; "sought to interfere with her medical appointments"; sent her harassing e-mail while she was on medical leave; told her to schedule medical appointments on her own time; refused to let her take certifications because she had taken disability leave; and failed to accommodate her disability when "it refused to

_____

[7]     Plaintiff also states in her response to Defendant's motion for summary judgment that she brings a claim under 42 U.S.C. § 1981. [Doc. 206-1 at 1]. No such claim appears in the amended complaint. (*See* Am. Compl., *passim*). Eleventh Circuit precedent precludes a plaintiff from amending her pleadings via arguments raised in her summary judgment brief. *Hurlbert v. St. Mary's Health Care Sys., Inc*., 439 F.3d 1286, 1297 (11th Cir. 2006) (concluding that after plaintiff proceeded through discovery without seeking to amend complaint to raise new claim, plaintiff "was not entitled to raise it in the midst of summary judgment"); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). The Court therefore cannot consider the claim, and **RECOMMENDS** that the District Judge **DISMISS** any such § 1981 claim.

AO 72A
(Rev.8/8
2)

discuss an accommodation with her." (*Id*. ¶ 191). She alleges in Count Two that Defendant violated the ADEA when it transferred her for complaining about discriminatory promotion and transfer decisions based on age; harassed her in connection with her FMLA leave; denied her tools to do her job; and refused to allow her to take continuing education classes. (*Id*. ¶ 202). She contends that younger employees were not treated the same way. (*Id*) She alleges in Count Three that Defendant committed gender discrimination in violation of Title VII when, unlike male employees, Plaintiff was "denied tools and privileges of employment"; denied a promotion based on her gender; retaliated against for taking FMLA leave; denied permission to attend training to maintain her certification; and was treated disrespectfully and abusively by Defendant's management. (*Id*. ¶ 214). Plaintiff alleges in Count Four that Defendant committed race discrimination in violation of Title VII when, unlike black employees, Plaintiff was "not afforded the same privileges and conditions of employment" and was denied a promotion based on her race. (*Id*. ¶ 222). She alleges in Count Five that after she filed a grievance and an EEOC charge in August 2009 alleging discrimination, Defendant retaliated against her by repeatedly writing her up; harassing her regarding her disability and medical leave; sending false and harassing e-mail; interfering with her medical leave; telling her she

21

could not take certification classes; telling her to schedule medical appointments on her own time; suspending her; and terminating her. (*Id*. ¶ 233). She alleges in Count Six that Defendant violated the FMLA when it wrote her up for unexcused absences, knowing she was on approved FMLA leave; sent her false and harassing e-mail for taking leave; advised her that she could not take certification classes because she took medical leave; told her she would have to schedule medical appointments on her own time; refused to discuss accommodation with her because she took leave; and suspended and fired her a month after she showed Defendant that her FMLA leave was proper. (*Id*. ¶ 238). Defendant moves for summary judgment on all of Plaintiff's claims. [Doc. 159].

## II.  *Standard of Review*

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."  *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "Only when that burden has been met does the burden shift to the non-moving

22

party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *See Anderson*, 477 U.S. at 252; *see also EPL, Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999). "If the record presents disputed issues of material fact, the Court may not decide them; rather, it must deny the motion

AO 72A
(Rev.8/8
2)

and proceed to trial." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001)).

## III.    Legal Framework

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to retaliate against an employee for her participation in certain statutorily protected activities:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a); *see also Biniashvili v. Bohne*, 397 Fed. Appx. 597, 598-99 (11th Cir. Sept. 28, 2010).

The ADEA likewise makes it unlawful for an employer, *inter alia*, "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

AO 72A
(Rev.8/8
2)

employment because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA also prohibits discrimination against any employee because she "has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d).

The FMLA allows covered employees "to take up to twelve weeks of leave in a twelve-month period for the birth or adoption of a child, or the 'serious health condition' of the employee or the employee's child, spouse, or parent." *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1305-06 (11th Cir. 2001) (quoting 29 U.S.C. § 2612(a)(1)). It also "prohibits an employer from interfering with an employee's attempt to exercise his leave right or retaliating against an employee for opposing practices made unlawful under the FMLA." *Id.* (citing 29 U.S.C. § 2615).

The ADA prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Retaliation against a person claiming a right under the ADA or opposing a practice made unlawful by the ADA is also prohibited. 42 U.S.C. § 12203.

25

Although the ADA does not expressly prohibit disability-based harassment, and the Eleventh Circuit Court of Appeals has not yet decided the issue, the Circuit has analyzed hostile-work-environment claims under the ADA under the presumption that they are cognizable. *See Wolfe v. Postmaster Gen*., 488 Fed. Appx. 465, 469 (11th Cir. Aug. 31, 3012).

The same general principles governing the order and allocation of proof in cases arising under Title VII apply to claims arising under the ADEA, the FMLA, and the ADA as well. *Smith*, 273 F.3d at 1314 (FMLA); *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995) (ADEA); *Bass v. Lockheed Martin Corp.*, 287 Fed. Appx. 808, 810 (11th Cir. July 24, 2008) (ADA); *Vaughn v. NationsBank Corp.*, 137 F. Supp. 2d 1317, 1322 (N.D. Ga. 2000) (Pannell, J.) (ADA). A plaintiff asserting a discrimination claim can support her claim either by direct or circumstantial evidence. *EEOC v. Joe's Stone Crabs, Inc*., 296 F.3d 1265, 1272 (11th Cir. 2002). If direct evidence of intentional discrimination does not exist or is insufficient, a plaintiff may offer circumstantial evidence, using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lawver v. Hillcrest Hospice, Inc*., 300 Fed. Appx. 768, 772 (11th Cir. Nov. 24, 2008) (citing *Standard v. A.B.E.L. Servs., Inc*., 161 F.3d 1318, 1331 (11th Cir. 1998)).

26

This framework requires the plaintiff to establish a *prima facie* case of discrimination, and then the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the employment action it took. The burden then shifts back to the plaintiff to demonstrate that the proffered reason was pretextual. The plaintiff can establish pretext by showing that the employer's non-discriminatory reason should not be believed, or, when considering all the evidence, that it is more likely that the discriminatory reasons motivated the decision than the employer's proffered reasons.

*Lawver*, 300 Fed. Appx. at 772 (citations omitted).

"The methods of presenting a prima facie case are flexible and depend on the particular situation." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004)). Generally speaking, to satisfy a *prima facie* case for a disparate-treatment claim based on circumstantial evidence, a plaintiff must show: " '(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her class more favorably; and (4) she was qualified to do the job.' " *Brown v. Jacobs Eng'g, Inc.*, 401 Fed. Appx. 478, 479-80 (11th Cir. Oct. 28, 2010) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

Regarding pretext,

27

AO 72A
(Rev.8/8
2)

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason.

*Alvarez*, 610 F.3d at 1265-66 (alteration in original) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (internal quotation marks omitted)). To avoid summary judgment, a plaintiff " 'must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination.' " *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993)). In other words, a plaintiff "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez*, 610 F.3d at 1265 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

## IV. *Discussion*

Defendant first argues that any claims Plaintiff may wish to bring based on Defendant's 2007 decisions to promote Maxey to Appraisal Manager over Plaintiff and

AO 72A
(Rev.8/8
2)

to transfer Plaintiff to the North office fail as a matter of law because those claims are time-barred. [Doc. 159-1 at 3-5]. Defendant also moves for summary judgment on all of Plaintiff's disparate-treatment claims arising from age, race, or gender discrimination on the grounds that Plaintiff cannot establish a *prima facie* case of discrimination. [*Id.* at 5]. Specifically, Defendant argues that there is no evidence that Plaintiff was subjected to an adverse employment action or that someone who was outside Plaintiff's protected race or gender class or who was substantially younger than Plaintiff was treated more favorably. [*Id.* at 8-11]. It also proffers nondiscriminatory reasons for its conduct and argues that Plaintiff cannot show those reasons are pretextual. [*Id.*]. With regard to Plaintiff's retaliation claims, Defendant contends that Plaintiff did not suffer a materially adverse action and argues that she did not engage in protected activity until after Defendant's allegedly discriminatory conduct took place and Plaintiff therefore cannot prove causation. [*Id.* at 13-14]. It also argues that it had legitimate nondiscriminatory reasons for terminating Plaintiff's employment. [*Id.* at 14-16]. As to the ADA claim, Defendant argues that Plaintiff is unable to show that she was subjected to discrimination because of her disability. [*Id.* at 19-20]. Finally, Defendant contends that its motion for summary judgment on Plaintiff's FMLA claims is due to be granted because Plaintiff was allowed to take all of the FMLA leave to which she

29

was entitled and because Plaintiff cannot prove the causation element of her retaliation claim. [*Id*. at 21-24].

Defendant's arguments and Plaintiff's responses are discussed in detail below. The Court first addresses Defendant's motion for summary judgment on the claims Plaintiff raises under Title VII and the ADEA. It then considers Defendant's motion on Plaintiff's ADA and FMLA claims.

## A. *Title VII and ADEA*

Defendant asserts that Plaintiff has narrowed her age, race, and gender claims to assertions that (1) she was denied the promotion to the Appraisal Manager position; (2) she was reassigned to the North office in retaliation for filing a grievance regarding her failure to receive the promotion; and (3) younger, less-qualified, black male employees received special treatment. [Doc. 159-1 at 8]. It argues that Plaintiff's failure-to-promote and transfer claims fail as a matter of law because they are time-barred, [*id*. at 3-5], and that, in any case, Plaintiff cannot prevail on her Title VII and ADEA claims because there is no evidence that Plaintiff was subjected to an adverse employment action or that someone who was outside Plaintiff's protected race or gender class or who was substantially younger than Plaintiff was treated more favorably, [*id*. at 8-11]. Defendant further argues that Plaintiff cannot make out a

30

*prima facie* case of retaliation under Title VII because Plaintiff's transfer took place before she filed her 2008 EEOC charge and because Defendant had legitimate nondiscriminatory reasons for all of its employment actions. [*Id*. at 12-17].

In response, Plaintiff defends only two allegations under Title VII and the ADEA: that Defendant engaged in impermissible discrimination by (1) unfairly distributing work tools in the form of appraisal books, Hewlett-Packard calculators, and cameras with video capability; and (2) permitting a "culture of 'boys club' like activity where women were treated as second class citizens." [Doc. 206-1 at 4, 6-7]. Plaintiff also states that she "does not oppose Defendant's motion with regard to her race, gender, age, and retaliation claims pertaining to her promotion denial and transfer in 2007." [*Id*. at n.1]. The Court therefore turns to Plaintiff's only remaining claims under Title VII and the ADEA: the claims regarding the work tools and the "boys club" atmosphere.[8]

---

[8] As to any Title VII or ADEA claims Plaintiff has not expressly abandoned but does not defend in her response to Defendant's motion for summary judgment, the undersigned **RECOMMENDS** to the District Judge that he **DEEM** those claims **ABANDONED**. Plaintiff's failure to respond mandates that summary judgment on these claims be entered against Plaintiff. *Floyd v. Home Depot U.S.A., Inc.*, 274 Fed. Appx. 763, 765 (11th Cir. Apr. 17, 2008); *Edmondson v. Bd. of Trustees of Univ. of Ala.*, 258 Fed. Appx. 250, 253 (11th Cir. Dec. 4, 2007) ("In opposing a motion for summary judgment, a party may not rely on her pleadings to avoid judgment against her. There is no burden upon the district court to distill every potential argument that

AO 72A
(Rev.8/8
2)

could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). A party has an obligation to respond to an argument raised in a motion for summary judgement. *See Orquiola v. Nat'l City Mortg. Co.*, 510 F. Supp. 2d 1134, 1139 (N.D. Ga. 2007) (Forrester, J.) (granting summary judgment as to plaintiff's state law claims because plaintiff did not respond to defendant's summary judgment motion on those claims); *Burnett v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) (Duffey, J.) ("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party."); *Welch v. Delta Air Lines*, 978 F. Supp. 1133, 1137 (N.D. Ga. 1997) (Hull, J.) ("Plaintiff's failure to respond to [d]efendant's argument alone entitles [d]efendant to summary judgment on these claims."). This Court is not under a duty to exercise imagination or conjure what a party might have argued, but did not argue; nor is this Court obliged to do Plaintiff's (or her counsel's) work. *See Resolution Trust Corp.*, 43 F.3d at 599 (noting that "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it"); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) (holding that "[i]t is not for the court to manufacture arguments on Plaintiff's behalf").

The undersigned recognizes that these cases appear to conflict with another line of Eleventh Circuit cases which direct district courts to review a motion for summary judgment and supporting documents to determine whether genuine issues of material fact exist despite a party's failure to respond. *See Trs. of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Employers v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039-40 (11th Cir. 2004); *United States v. One Piece of Prop., 5800 S.W. 4th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004). The Court finds, however, that the apparent may be resolved in the following manner: Where a party wholly fails to respond to a summary judgment motion, the district court must make sure that it nonetheless is appropriate to enter summary judgment against the party that did not respond; in contrast, where the non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other

AO 72A
(Rev.8/8
2)

Defendant argues that Plaintiff cannot show that she was subject to employer conduct amounting to a materially adverse employment action within the context of a Title VII or ADEA claim. [Doc. 159-1 at 5-11]. Plaintiff, in response, argues that under *Hishon v. King & Spalding*, 467 U.S. 69 (1984), the denial of equipment was an impermissible discriminatory denial of a benefit or "privilege of employment." [Doc. 206-1 at 5-7]. She further contends that there was a "boys club" culture where male employees were treated with respect while women were ignored and treated as second-class citizens. [*Id*. at 7]. Defendant, in reply, argues that neither the denial of equipment nor the "boys club" office atmosphere was sufficiently "objectively serious or tangible" to rise to the level of an "adverse employment action." [Doc. 225 at 8-10].

The Eleventh Circuit Court of Appeals has explained the law on adverse employment actions as follows:

> Whatever the benchmark, it is clear that to support a claim under Title VII's anti-discrimination clause the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way. Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment. We therefore hold that, to prove adverse employment action in a case under Title VII's anti-discrimination clause,

---

claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned.

33

AO 72A
(Rev.8/8
2)

an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling: the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

*Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).

### 1.     Denied Requests for Equipment

Here, it is clear that the denied requests for equipment did not constitute adverse employment actions. Plaintiff admits that she was provided with equipment necessary for her to perform her job; instead she claims that she suffered a materially adverse employment action when she was denied newer equipment. (D ¶ 166; Pl. Resp. ¶ 166; *see also* P ¶¶ 90, 95). She contends that this constituted denial of "privileges of employment," as proscribed in *Hishon*.     [Doc. 206-1 at 5-6 (citing *Hishon*, 467 U.S. at 75-76)].

*Hishon*, however, provides a weak analogy to Plaintiff's claims in this case. The Plaintiff in *Hishon* was an associate attorney passed over for partnership in her law firm and consequently terminated. *Hishon*, 467 U.S. at 72. The Court determined that the plaintiff had adequately stated a Title VII claim for discriminatory denial of privileges of employment based on allegations that "would support the conclusion that the

34

AO 72A
(Rev.8/8
2)

opportunity to become a partner was part and parcel of an associate's status as an employee"—namely that the employer "used the prospect of ultimate partnership to induce young lawyers to join the firm" and that it was known among the associates that they "could regularly expect to be considered for partnership at the end of their 'apprenticeships.' " *Id*. at 76. To analogize *Hishon* to the case at hand, the Court would have to find that the promise of receiving new equipment was a primary factor inducing Plaintiff to work for Defendant, such that it became "a term, condition, or privilege of her employment." *See id*. at 75-76. Plaintiff proffers no facts to show that receipt of new equipment was so central to her employment with Defendant. Nor does Plaintiff cite any cases in which a court found that a plaintiff provided with tools adequate to do her work suffered an adverse employment action by being denied newer tools. As a result, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** summary judgment to Defendant on the Title VII and ADEA claims arising from Defendant's refusal to provide Plaintiff with new equipment.

### 2. *Boys' Club Culture*

Plaintiff also argues that during George's tenure, "there existed a culture of 'boys club' like activity where women were treated as second class citizens" and "were ignored," while "[m]ale employees were treated with respect." [Doc. 206-1 at 7].

AO 72A
(Rev.8/8
2)

Plaintiff contends that the behavior so "permeated the workplace" that it "was sufficient enough to alter the terms, conditions and privileges of employment, as well." [*Id*.]. It is, however, well settled that such general allegations of poor treatment are insufficient to show that a plaintiff suffered an adverse employment action.

It is a "bedrock principle that not all objectionable conduct or language amounts to discrimination under Title VII [because] Title VII is not a 'general civility code.' " *Reeves v. C.H. Robinson Worldwide. Inc*., 594 F.3d 798, 809 (11th Cir. 2010) (en banc). To rise to the level of an actionable Title VII claim, employment decisions must work a material alteration on the terms of employment, as opposed to being merely petty slights or trivial annoyances. *See Davis*, 245 F.3d at 1239. The asserted impact "cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Filius v. Potter*, 176 Fed. Appx. 8, 10 (11th Cir. Mar. 15, 2006). "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis*, 245 F.3d at 1239. While the Court can certainly see that a boys' club culture would be aggravating, the Court does not find that Plaintiff has presented evidence sufficient for a reasonable factfinder to determine that the conduct was a serious and material alteration to the

36

terms of her employment. *Cf. Harnan v. Univ. of St. Thomas*, 776 F. Supp. 2d 938, 945 (D. Minn. 2011) (holding in reference to a state law anti-discrimination claim that "vague references to St. Thomas being a 'boy's club' without further elaboration do not support a reasonable belief that gender discrimination was occurring"); *see also Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1214 (10th Cir. 2003) (holding that "poor treatment" by supervisor, including disagreements over work specifications, "unsubstantiated oral reprimands," and "unnecessary derogatory comments," even in front of employees supervised by plaintiff, did not constitute materially adverse employment action). *Compare Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 60, 67 (1986), cited by Plaintiff [Doc. 206-1 at 6] as a "decision evidenc[ing] a broad consideration of 'terms, conditions and privileges' of employment" (finding bank employee's allegations that her supervisor made repeated demands for sexual favors during and after business hours, fondled her in front of other employees, followed her into the women's restroom, exposed himself to her, and forcibly raped her on several occasions, was sufficient to state a hostile-work-environment claim). Thus, Plaintiff's conclusory allegation that she was subject to an adverse employment action because she and the other women were ignored and because they suffered a "boys club" culture is unavailing.

AO 72A
(Rev.8/8
2)

For these reasons, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendant's motion for summary judgment on the Title VII and ADEA claims arising from the unequal distribution of work tools and Plaintiff's allegations that the women were ignored and forced to endure a "boys club" culture. Because Plaintiff has not attempted to defend any of her other Title VII or ADEA claims in the face of Defendant's motion for summary judgment, this amounts to a **RECOMMENDATION** that Defendant's motion be **GRANTED** in full as to Counts Two, Three, Four, and Five.

### B.    ADA

"Under the ADA rubric of discrimination, an employer must make reasonable accommodations that allow a disabled individual to perform her job, unless that accommodation would cause an undue hardship." *Standard*, 161 F.3d at 1327 (citing *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996), and 42 U.S.C. § 12112(b)(5)(A)). "In order to establish a prima facie case of discrimination under the ADA, the plaintiff must show that: (1) [s]he is disabled; (2) [s]he was a 'qualified individual' at the relevant time, meaning that [s]he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) [s]he was discriminated against because of h[er] disability." *Lucas v. W.W.*

AO 72A
(Rev.8/8
2)

*Grainger, Inc*., 257 F.3d 1249, 1255 (11th Cir. 2001). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *Chapman v. U.S. Postal Serv*., 442 Fed. Appx. 480, 484 (11th Cir. Oct. 4, 2011).

Presuming that the ADA provides for a cause of action for hostile work environment, to establish a *prima facie* case of such discrimination, the plaintiff must show:

> (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment . . . ; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Wolfe*, 488 Fed. Appx. at 469 (quoting *Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotation marks omitted)).

Plaintiff claims that she was subjected "to unwelcome harassment based on her disability" when Defendant wrote her up for unexcused absences while she was on FMLA leave; "sought to interfere with her medical appointments"; sent her harassing e-mail while she was on medical leave; told her to schedule medical appointments on

AO 72A
(Rev.8/8
2)

her own time; refused to let her take certifications because she had taken disability leave; and failed to accommodate her disability when "it refused to discuss an accommodation with her." (Am. Compl. ¶ 191). In its motion for summary judgment, Defendant states that Plaintiff's only request for a reasonable accommodation was the request not to be transferred to the North office, which the ODA denied on October 1, 2007. [Doc. 159-1 at 19]. It further argues that while it is undisputed that Plaintiff was disabled, she cannot show that she was subjected to discrimination because of her disability. [*Id.*].

In response, Plaintiff does not show evidence that Defendant treated her differently from non-disabled employees or harassed her because she is disabled.[9] [*See* Doc. 206-1 at 7-12]. She does, however, argue that she was denied reasonable accommodations based on her disability. [*Id.*]. Specifically, she argues that after she

---

[9] The Court recognizes that Plaintiff has included a footnote stating that the denial of her requests for reasonable accommodations and the fact that she was written up by Brown on March 17, 2009, thirteen days after the EEOC issued a decision in the 2008 Charge, and given a written warning on May 1, 2009, while she was on continuous FMLA leave somehow raise an inference of discrimination on the basis of a disability. [Doc. 206-1 at 10 n.2]. It is unclear to the Court how these facts—even presumed true—might raise an inference of disparate treatment or harassment rather than form the basis for a claim for failure to accommodate or interference with FMLA leave. Therefore, lacking any argument or explanation from Plaintiff, the Court finds that she has failed to establish a genuine issue of material fact as to a disparate-treatment or harassment claim arising from her disability.

40

AO 72A
(Rev.8/8
2)

made her request to the ODA not to be transferred to the North office and that request was denied, she asked Manning for leave to come in earlier so that she could "beat some of the traffic"; use flex hours that were part of the Fulton County Board of Assessors policy; and be able to leave early on the days she had doctor's appointments. [Doc. 206-1 at 10-11 (referring to P ¶¶ 43-46)]. She states that Manning granted her use of flex time so that she could come in to work at 7 a.m., but George "removed that accommodation" after about five months. [Doc. 206-1 at 11 (referring to P ¶¶ 43-44)]. She also states that Manning and Brown denied her permission to leave work early to attend psychiatric appointments. [Doc. 206-1 at 11 (referring to P ¶ 46)]. She argues that the transfer to the North office created an "obvious necessity" for increased lead time to arrive at her appointments on time and that Defendant could have easily accommodated her needs but chose not to do so. [Doc. 206-1 at 12].

Defendant, in reply, first newly argues that Plaintiff's disability claims are time-barred. [Doc. 225 at 14-15]. Second, Defendant insists that Plaintiff's sole request for a reasonable accommodation was that she not be reassigned to the North office. [*Id.* at 16]. It also suggests for the first time that Plaintiff requested the accommodation not because of her disability but because she was unhappy about the choice of her reassignment and wished to preempt it. [*Id.*]. It further argues that

41

commuting to and from work was Plaintiff's sole responsibility and is not covered by the ADA, [*id*. at 17 (citing *Salmon v. Dade Cnty. Sch. Bd.*, 4 F. Supp. 2d 1157, 1163 (S.D. Fla. 1998))], and argues that Plaintiff has "not carried her burden of demonstrating how not commuting to and from the North Office would allow her to perform the essential functions of her job," [Doc. 225 at 17 (citing *Lucas*, 257 F. 3d at 1255-56)]. Third, Defendant argues that Plaintiff cannot show that she was denied reasonable accommodation when she was not allowed to leave early for doctor's appointments and when her permission to arrive at work at 7 a.m. was revoked. It contends that the flex-time claim fails because George shifted Plaintiff's hours only one-half hour later, which, Defendant argues, was still a "reasonable accommodation." [Doc. 225 at 17-18]. It also argues that both the flex-time claim and the claim for early leave to attend doctor's appointments fail because Plaintiff never made the request through Fulton County's Office of Disability Affairs, which, Defendant argues, "ultimately proves fatal" to Plaintiff's claim. [*Id*.].

The Court finds that Plaintiff has presented evidence sufficient to overcome the narrow grounds upon which Defendant based its summary-judgment motion on Plaintiff's claims for failure to accommodate. Plaintiff has shown evidence that she made three requests for accommodation based on her disability: a request not to be

42

transferred to the North office, a request for early flex hours, and a request to leave early when she had doctor's appointments, (P ¶¶ 39-46 (citing Pl. Dep. at 50-61 & Exh. 7)). She also has shown evidence that the request not to be transferred was denied, that the permission to use flex hours was revoked in 2008, and that Manning and Brown denied her requests to leave early for doctor's appointments. (P ¶¶ 39-46 (citing Pl. Dep. at 50-61 & Exh. 7)). Indeed, in its own statement of material facts, Defendant concedes that Plaintiff made the request for an accommodation of flex hours or an earlier shift to Manning, (D ¶ 109), and acknowledges Plaintiff's testimony regarding the other requests and their denial, (*see* D ¶¶ 106-08, 111-12), and in response to Plaintiff's statement of material facts, it fails to point to any evidence showing that George did not take away the flex time in 2008, (*see* D. Resp. ¶ 44). As a consequence, the Court finds that Plaintiff has established a genuine issue of material fact as to whether she requested and was denied reasonable accommodations—the only elements of her failure-to-accommodate claims that Defendant challenged in its motion. *See Four Parcels of Real Prop.*, 941 F.2d at 1437 (providing that on summary judgment the evidence and reasonable inferences that may be drawn from the evidence are interpreted in the light most favorable to Plaintiff).

43

The arguments Defendant raises in its reply brief are unavailing for myriad reasons. First, Defendant's arguments that Plaintiff's ADA claims are time-barred and that claims arising from a commute are not actionable under the ADA may not properly be considered because Defendant did not raise them in its motion for summary judgment. *See U.S. Commodity Futures Trading Comm'n v. Atha*, 420 F. Supp. 2d 1373, 1381 (N.D. Ga. 2006) ("[T]he court need not consider an argument raised for the first time in a reply brief."); *see also Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1310 n.17 (11th Cir. 2012) ("Because Kernel raised this argument for the first time in its reply brief, we treat the argument as waived."). Similarly, because Defendant did not state in its motion for summary judgment that Plaintiff cannot show evidence that relief from the North-office commute would allow her to perform the essential functions of her job, Defendant has not carried its summary-judgment burden and may not now raise the issue in its reply brief. *See Rice-Lamar*, 232 F.3d at 840 (providing that the moving party carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact"). Second, Defendant's argument that Plaintiff's request to remain in the downtown Atlanta office had nothing to do with her disability does not appear to be supported by a statement of material fact

44

AO 72A
(Rev.8/8
2)

and is therefore also improperly presented to the Court. *See* LR 56.1(B)(1)(d), NDGa ("The court will not consider any fact . . . set out only in the brief and not in the movant's statement of undisputed facts."). Moreover, the evidence Defendant cites directly does not support Defendant's statement that the request not to transfer was not related to Plaintiff's disability. [*See* Doc. 225 at 16 (citing Pl. Dep., Exh. 5 [Doc. 193-1 at 19])]. Third, even were a factual argument proper on a motion for summary judgment—which of course, it is not—Defendant does not present a statement of material fact regarding the arrival time George mandated for Plaintiff or show any evidence indicating that it was still a reasonable accommodation. Fourth, Defendant does not present any evidence or authority indicating that an employee's request for an accommodation is not actionable unless the request was made through the Office of Disability Affairs rather than directly to her managers.

For all of these reasons, the undersigned **RECOMMENDS** to the District Judge that he **DENY** Defendant's motion for summary judgment on Plaintiff's claims under the ADA for failure to accommodate and **GRANT** the motion on the remainder of Plaintiff's ADA claim.

45

AO 72A
(Rev.8/8
2)

*C.*    *FMLA*

Plaintiff claims that Defendant violated the FMLA when it wrote Plaintiff up for unexcused absences despite knowing she was on approved FMLA leave; sent her false and harassing e-mail for taking leave; advised her that she could not take certification classes because she took medical leave; told her she would have to schedule medical appointments on her own time; refused to discuss accommodation with her because she took leave; and suspended and fired her a month after she showed Defendant that her FMLA leave was proper. (Am. Compl. ¶ 238). She also alleges that her FMLA rights were violated when she was "continuously written up, suspended and terminated for taking FMLA," (P ¶ 77), and when Kirkpatrick denied her permission to take a half-day off for a doctor's appointment before her FMLA leave was exhausted and told her she could not have any days off unless it was FMLA or emergency leave, even when she had a doctor's excuse for an appointment, (P ¶¶ 78-79; D. Resp. ¶¶ 78-79; Pl. Dep. at 64-65, 141-42).

As previously noted, a plaintiff may bring two types of claims under the FMLA: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, . . . , and retaliation claims, in which an employee asserts that his employer discriminated against him

46

because he engaged in activity protected by the Act . . . ." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001) (citations omitted); *see also Hurlbert*, 439 F.3d at 1293 (quoting *Strickland*, 239 F.3d at 1206). To state a claim for interference with a substantive right under the FMLA, the plaintiff "need only demonstrate by a preponderance of the evidence that [she] was entitled to the benefit denied." *Strickland*, 239 F.3d at 1206-07. "Interfering with" the exercise of FMLA rights includes both "refusing to authorize FMLA leave . . . [and] discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). When bringing an interference claim, "[t]he employee need not allege that [her] employer intended to deny the benefit—the employer's motives are irrelevant." *Hurlbert*, 439 F.3d at 1293. Conversely, to state a claim for retaliation under the FMLA, the plaintiff "must demonstrate that his employer intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right"; in other words, the plaintiff shoulders the increased burden of showing that the defendant's actions "were motivated by an impermissible or discriminatory animus." *Strickland*, 239 F.3d at 1207 (internal quotation marks omitted).

Defendant moves for summary judgment on Plaintiff's FMLA interference claims based on Plaintiff's alleged admission that she was allowed to take her FMLA

47

leave at all times. [Doc. 159-1 at 21]. Defendant also moves for summary judgment on Plaintiff's retaliation claims, arguing that "Plaintiff is unable to present a jury question regarding causation because the record evidence is overwhelming that management contemplated terminating her [for excessive absenteeism and failure to carry out work assignments] before she ever exercised any rights under the FMLA." [*Id*. at 23]. In response, Plaintiff points to numerous statements of material fact regarding write-ups for absenteeism while Plaintiff was on continuous FMLA leave, interference with Plaintiff's medical appointments, suspensions, and termination. [Doc. 206-1 at 15 (citing P ¶¶ 76-85)]. She also points out that she can show evidence of causation with regard to her retaliation claim because she was notified of her pending termination just five days after her FMLA leave expired and was terminated within eight days after the expiration; there is no evidence that Manning seriously contemplated firing her before she took FMLA leave; and "the attendant circumstances give rise to the inference of retaliatory intent. [Doc. 206-1 at 15-16].

### 1. Interference

Defendant asserts that Plaintiff cannot prove that Defendant interfered with her FMLA rights because "she was allowed to take her FMLA leave at all times." [Doc. 159-1 at 21]. By alleging that Plaintiff was always allowed to take FMLA leave,

48

AO 72A
(Rev.8/8
2)

it appears that Defendant is suggesting that Plaintiff was not denied a substantive right and therefore cannot raise an interference claim.  [*See id.*].

Were this an undisputed statement of material fact, Defendant would be entitled to summary judgment on Plaintiff's FMLA interference claim.  To bring a successful FMLA interference claim, a plaintiff must be able to show that she suffered some sort of prejudice as a result of the defendant's interference.  In *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002), the United States Supreme Court determined that a Department of Labor regulation was invalid because it "alter[ed] the FMLA's cause of action in a fundamental way . . . [by] reliev[ing] employees of the burden of proving any real impairment of the rights and resulting prejudice."  *Ragsdale*, 535 U.S. at 90; *Delise v. Metro-North R.R. Co.*, 646 F. Supp. 2d 288, 290 (D. Conn. 2009).  The Court then explained that 29 U.S.C. § 2617, the FMLA's enforcement provision, "provides no relief unless the employee has been prejudiced by the violation:  The employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B).  The remedy is tailored to the harm suffered."  *Ragsdale*, 535 U.S. at 89; *Delise*, 646 F. Supp. 2d at 290; *see*

49

*also Demers v. Adams Homes of Nw. Fla., Inc.*, 321 Fed. Appx. 847, 849 (11th Cir. Mar. 20, 2009) (citing *Ragsdale*, 535 U.S. at 89 ("The FMLA's '§ 2617 provides no relief unless the employee has been prejudiced by the violation' in some way.")).

Here, however, Defendant does not cite a statement of material fact to support its statement that Plaintiff was allowed to take her FMLA leave at all times, and the Court finds none. [*See* Doc. 159-1 at 21]. Consequently, the statement is not properly before the Court on Defendant's motion for summary judgment. *See* LR 56.1(B)(1)(d), NDGa ("The court will not consider any fact . . . set out only in the brief and not in the movant's statement of undisputed facts."). Additionally, the Court has reviewed the deposition testimony cited directly by Defendant in its brief and finds that the assertion is qualified by Plaintiff's testimony that on one occasion Kirkpatrick denied her permission to take leave to go to a doctor's appointment. (Pl. Dep. at 141-42 (cited in P ¶ 78)). Consequently, Plaintiff has raised a genuine issue of material fact as to whether Defendant interfered with her right to take FMLA leave.

Accordingly, the undersigned **RECOMMENDS** to the District Judge that he **DENY** Defendant's motion for summary judgment on Plaintiff's FMLA interference claim.

50

AO 72A
(Rev.8/8
2)

## 2.    Retaliation

A *prima facie* case of retaliation under the FMLA requires a showing that "(1) the employee engaged in statutorily protected conduct," (2) she suffered a materially adverse action, and "(3) there is a causal connection between the two."[10] *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010).  The plaintiff may satisfy the causal-relation element by showing that "the protected activity and adverse action were 'not wholly unrelated.' " *Id*.  Although an inference of causation can be established by showing close temporal proximity between the statutorily protected activity and the adverse employment action, if there is no other evidence of causation,

---

[10]    In *Crawford v. Carroll*, 529 F.3d 961, 973-74 (11th Cir. 2008), the Eleventh Circuit recognized that the Supreme Court's decision in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), broadened the type of employer conduct considered actionable in a retaliation claim, from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related.  *Crawford*, 529 F.3d at 973.  Therefore, as result of *Burlington Northern* and *Crawford*, the Court concludes that it is inappropriate to refer to this element as the adverse employment action element.  *Burlington Northern* explicitly states that "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington Northern*, 548 U.S. at 67.  The Court's decision merely requires the employee to show that a reasonable employee would have found the challenged action materially adverse, meaning the reasonable worker would be dissuaded from making or supporting a charge of discrimination.  *Id*. at 68 (quotation marks and citations omitted).  Thus, it is more appropriate to refer to the "adverse employment action" element as the "materially adverse action" element.

AO 72A
(Rev.8/8
2)

the temporal proximity must be very close. *Drago v. Jenne*, 453 F.3d 1301, 1308 (11ᵗʰ Cir. 2006) (holding that a three-month disparity was insufficiently close). Additionally, in a retaliation case, "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Id.*

In its motion for summary judgment, Defendant relies entirely on an argument that Plaintiff cannot show that Defendant's decision to terminate her was causally related to any protected activity because "the record evidence is overwhelming that management contemplated terminating her before she ever exercised any rights under the FMLA." [Doc. 159-1 at 23]. It is undisputed, however, that from January 2006 through her termination in November 2009, Plaintiff filed paperwork to be approved for intermittent FMLA every year. (D ¶ 115; P. Resp. ¶ 115). Defendant also sets forth facts showing that it was Manning's decision to dismiss Plaintiff. (D ¶¶ 20, 142). Oddly, given its position in this case, Defendant also notes in its reply brief that when Plaintiff began exercising her FMLA rights in January 2006, Manning had not yet become employed with Defendant. [Doc. 225 at 25]; (*see also* D ¶ 26 (stating that Manning became employed with Defendant in July 2006); P. Resp. ¶ 26).

52

AO 72A
(Rev.8/8
2)

Consequently, it is temporally impossible for Manning to have seriously contemplated terminating Plaintiff's employment before she began exercising her rights under the FMLA.

In light of these undisputed material facts, the Court finds that Defendant has failed to put forth any compelling argument or evidence supporting its motion for summary judgment on Plaintiff's FMLA retaliation claim. [*See* Doc. 159-1 at 21-24]. As noted above, on a motion for summary judgment, the moving party carries the initial burden of "informing the court of the basis for its motion." *Rice-Lamar*, 232 F.3d at 840 (further providing that the moving party also carries the initial burden of "identifying those materials that demonstrate the absence of a genuine issue of material fact"); *see also* LR 7.1A(1), NDGa (providing that "[e]very motion presented to the clerk for filing shall be accompanied by a memorandum of law which cites supporting authority").

Because Defendant has proffered insufficient evidence to support the legal grounds for its motion for summary judgment, the undersigned finds that it has not met the initial burden it must bear on such a motion. The undersigned therefore **RECOMMENDS** to the District Judge that he **DENY** Defendant's motion for

AO 72A
(Rev.8/8
2)

summary judgment on its contention that Plaintiff cannot raise a genuine issue of material fact as to the causation element of her FMLA retaliation claim.

## V.     *Conclusion*

For the reasons set forth above, the undersigned **RECOMMENDS** to the District Judge that he **DENY** Defendant's motion for summary judgment as to Plaintiff's FMLA claims and the failure-to-accommodate claim Plaintiff raises under the ADA and **GRANT** Defendant's motion for summary judgment as to all of Plaintiff's remaining claims.  [Doc. 159].

**IT IS SO RECOMMENDED**, this the 13th day of February, 2013.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)